UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| CHRISTA BUSH | CIVIL ACTION NO. 24-106 |
| VERSUS | JUDGE EDWARDS |
| LOUISIANA HOMECARE OF MISS-LOU | MAG. JUDGE PEREZ-MONTES |

**MEMORANDUM RULING**

Before the Court is Defendant's Motion for Summary Judgment filed by Louisiana Homecare of Miss-Lou, LLC, ("Defendant" or "LHC").[1] Plaintiff Christa Bush ("Plaintiff" or "Bush") opposed the Motion,[2] and Defendant replied.[3] Defendant also filed a supplemental reply.[4] After careful consideration of the law, the facts in the record, and the arguments and submissions of the parties, for the following reasons, Defendant's Motion for Summary Judgment is **GRANTED**.

I.   **FACTUAL BACKGROUND**

Bush, an African American, brings this action pursuant to Title VII against her former employer, Defendant LHC, alleging race discrimination in connection with a denial of a promotion to the role of Executive Director and retaliation.[5]

Bush began her employment with LHC in 2015 as a home health nurse at its Ferriday, Louisiana agency.[6] After approximately five years, she was promoted in 2020 to a Patient Care Manager ("PCM") position, where she supervised nurses

---

[1] R. Doc. 19.
[2] R. Doc. 23.
[3] R. Doc. 24.
[4] R. Doc. 35.
[5] R. Doc. 1.
[6] R. Doc. 19-1 at 5.

providing home health services.[7] In November 2021, Plaintiff reported her coworker, Teri Troxler, for allegedly making a race-based comment suggesting that people should not date outside their race.[8] LHC investigated Plaintiff's report in accordance with its established procedures and counseled Troxler.[9]

In September 2022, Executive Director Meghan Floyd resigned, leaving the position vacant.[10] Bush applied for the position.[11] Regional Vice President Spencer Thibodeaux interviewed Bush for the role.[12] During Plaintiff's interview for the administrative role of Executive Director, Thibodeaux discovered that Plaintiff did not meet Louisiana's legal requirement of three years' management experience in healthcare delivery, as mandated by La. Admin. Code tit. 48, pt. 1 § 9103. By contrast, the other applicant, Lyndsie Raines, possessed over five years of management experience overseeing 20-25 nurses.[13] LHC selected Raines for the Executive Director position.[14]

After the selection, LHC leadership became aware of allegations that Plaintiff had told coworkers she was denied the promotion due to her race.[15] In an October 20, 2022 meeting with Plaintiff, Thibodeaux and Chief Diversity Officer Lolanda Brown addressed the reports, but Plaintiff denied making those statements.[16] During the meeting, Plaintiff also raised the racially insensitive comment from Troxler made

---

[7] R. Doc. 19-1 at 5.
[8] R. Doc. 19-1 at 5-6.
[9] R. Doc. 19-1 at 5-6.
[10] R. Doc. 19-1 at 6.
[11] R. Doc. 19-1 at 6.
[12] R. Doc. 19-1 at 6.
[13] R. Doc. 19-1 at 7.
[14] R. Doc. 19-1 at 7.
[15] R. Doc. 19-1 at 7.
[16] R. Doc. 19-1 at 7-8.

nearly a year earlier.[17] In response, Thibodeaux conducted a review of the Standards of Conduct for the employees in the Ferriday agency.[18] Troxler was not involved in the Executive Director hiring process.[19]

Plaintiff continued to serve as a PCM under Raines's supervision.[20] In February 2023, Raines conducted an annual performance evaluation of Plaintiff.[21] Dissatisfied with her evaluation scores, Plaintiff contends that she received "negative performance evaluations, directly contradicting her prior positive performance history."[22]

On April 4, 2023, Plaintiff resigned from LHC.[23] She filed a Charge of Discrimination with the Equal Employment Opportunity Commission on June 23, 2023,[24] and subsequently initiated this lawsuit on January 25, 2024.[25]

## II.   LEGAL STANDARD

Summary judgment is appropriate when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[26] "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[27] "A dispute is genuine if the summary judgment evidence is such that a reasonable

---

[17] R. Doc. 19-1 at 8.
[18] R. Doc. 19-1 at 8.
[19] R. Doc. 19-1 at 8.
[20] R. Doc. 19-1 at 8.
[21] R. Doc. 19-1 at 8.
[22] R. Doc. 23 at 21.
[23] R. Doc. 19-1 at 8.
[24] R. Doc. 19-12.
[25] R. Doc. 1.
[26] Fed. R. Civ. P. 56(a).
[27] *Hyatt v. Thomas,* 843 F.3d 172, 177 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

jury could return a verdict for the [non-movant]."[28] In evaluating a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party."[29]

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."[30] "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim."[31] Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate.[32]

### III.   LAW & ANALYSIS

In its Motion, Defendant raises several arguments. Defendant contends that: (1) Plaintiff cannot establish a prima facie case of race discrimination because she was not qualified for the Executive Director position; (2) Plaintiff cannot show that Defendant's stated reasons were pretextual; (3) Plaintiff cannot establish the elements of a retaliation claim under Title VII; (4) Plaintiff did not suffer any adverse

---

[28] *Id.* (internal quotations omitted).
[29] *Total E&P USA Inc. v. Kerr-McGee Oil & Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (internal citations omitted).
[30] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247).
[31] *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 263 (5th Cir. 2002).
[32] *Id.*

employment action; (5) Plaintiff cannot show the required causation to support her retaliation claim; (6) Plaintiff cannot establish a constructive discharge; and (7) in the alternative, Defendant is entitled to summary judgment on Plaintiff's claims for wage-related damages. The Court will address Defendant's arguments as necessary.

### a. Title VII Race Discrimination Claim

Plaintiff does not allege any direct evidence of discrimination, so the *McDonnell Douglas* burden-shifting analysis applies.[33] "To survive summary judgment under *McDonnell Douglas,* the plaintiff must first present evidence of a prima facie case of discrimination."[34] To establish a prima facie case of discrimination, Plaintiff must show (1) she is a member of a protected class; (2) she is qualified for the position; (3) she suffered an adverse employment action; and (4) she was replaced by someone outside her protected class or was treated less favorably than other similarly situated employees outside the protected group.[35] If Plaintiff demonstrates a prima facie case, the burden shifts to LHC to articulate a legitimate, non-discriminatory reason for its challenged actions.[36] Finally, if LHC meets its burden, Plaintiff must then offer sufficient evidence to raise a genuine issue of material fact as to whether the employer's reasons are false or "unworthy of credence" and, thus, merely a pretext for discrimination.[37] Plaintiff retains the burden of

---

[33] *Id.* (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973)).
[34] *Id.* at 317.
[35] *Bryan v. McKinsey & Co.,* 375 F.3d 358, 360 (5th Cir.2004).
[36] *Pacovsky v. City of Booneville Mississippi*, 347 Fed.Appx. 42, 43–44 (5th Cir.2009).
[37] *Id.*

persuading the fact finder that impermissible discrimination motivated the adverse employment action.[38]

Defendant argues that Plaintiff cannot establish a prima facie case of race discrimination because she was not qualified for the Executive Director position under Louisiana law.[39] Specifically, Defendant contends La. Admin. Code tit. 48, pt. 1 § 9103 requires an Executive Director to have at least three years of management experience in healthcare delivery, which it alleges Plaintiff undisputedly lacked at the time of her application.[40] Defendant maintains that this legal requirement, not any discriminatory motive, was the reason Plaintiff was not promoted. Defendant also points out that the successful candidate, Raines, possessed over five years of relevant management experience, directly satisfying the statutory qualifications.[41]

Plaintiff responds by arguing she was qualified because "she had substantial management experience as a Patient Care Manager (PCM) and as a Plant Nurse at Fruit of the Loom."[42] Notably lacking from the Plaintiff's opposition is evidence or even the allegation that Plaintiff had the three years of management experience required by law. La. Admin. Code tit. 48, pt. 1 § 9103 requires that administrators "shall have three years of management experience in the delivery of health care service[.]" It is not disputed that Plaintiff did not have three years of management experience with LHC.[43] Further, it is clear from Plaintiff's deposition that in her

---

[38] *Id.*
[39] R. Doc. 19-1 at 11.
[40] R. Doc. 19-1 at 11.
[41] R. Doc. 19-1 at 12.
[42] R. Doc. 23 at 10.
[43] R. Doc. 19-8 at 10.

position as a plant nurse at Fruit of the Loom, she did not manage other nurses, so therefore, her time there could not run toward the three-year requirement.[44] At the time she applied for the position, Bush did not have three years of management experience; therefore, by law, she not qualified for the position. Under the *McDonnell Douglas* framework, if the plaintiff can't meet the prima facie showing, the Court may end its analysis there.

Because Plaintiff cannot make out her prima facie case, the Court suspends its inquiry and summary judgment on this claim is warranted.

### b. Retaliation Claim

To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action.[45] Once the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for its actions.[46] If the employer does so, the burden returns to the plaintiff to show that the proffered reason is pretextual.[47]

In its Motion, Defendant argues that Plaintiff's Title VII retaliation claim fails because she cannot establish either an adverse employment action or the required causal connection between any protected activity and alleged retaliation.[48] Defendant first contends that Plaintiff suffered no adverse employment action after her 2021

---

[44] R. Doc. 19-8 at 7.
[45] *Cooper v. Dallas Police Ass'n*, 278 F. App'x 318, 320 (5th Cir. 2008).
[46] *Hockman v. Westward Commc'n LLC,* 407 F.3d 317, 330 (5th Cir. 2004).
[47] *See McDonnell Douglas,* 411 U.S. at 804.
[48] R. Doc. 19-1 at 14.

complaint about racially discriminatory remarks by her former co-worker, Troxler.[49] Defendant highlights how Plaintiff was neither terminated nor demoted, and she resigned voluntarily.[50] Defendant asserts that Plaintiff's three categories of alleged retaliatory acts—(1) a negative performance evaluation; (2) unfair criticism of her work; and (3) denial of a request to work from home—do not amount to adverse employment actions under Title VII.[51] Defendant argues the negative evaluation did not result in any change to Plaintiff's job or benefits, that ordinary workplace criticism does not constitute materially adverse action, and that the denial of remote work was a de minimis inconvenience insufficient to support a retaliation claim.[52]

Even assuming any of these acts could qualify as adverse employment actions, Defendant asserts Plaintiff cannot show "but-for" causation linking the alleged retaliation to her protected activity.[53] Defendant highlights that there is nearly a year-long gap between Plaintiff's November 2021 protected complaint and the earliest alleged retaliatory conduct in late 2022, which undermines any inference of causation.[54] Defendant also contends Plaintiff offered no evidence beyond her own speculative belief that the actions were retaliatory.[55] Without competent evidence of either adverse action or causation, Defendant argues Plaintiff cannot establish a prima facie case of retaliation, and her claim should be dismissed with prejudice.[56]

---

[49] R. Doc. 19-1 at 15.
[50] R. Doc. 19-1 at 15.
[51] R. Doc. 19-1 at 15-17.
[52] R. Doc. 19-1 at 15-17.
[53] R. Doc. 19-1 at 17.
[54] R. Doc. 19-1 at 18.
[55] R. Doc. 19-1 at 18.
[56] R. Doc. 19-1 at 18.

In response to Defendant's argument that she suffered no adverse employment action and cannot show causation, Plaintiff contends that she experienced multiple materially adverse actions that would dissuade a reasonable employee from engaging in protected activity.[57] While making no citations to the law or the record, Plaintiff asserts that the denial of remote work privileges during her approved intermittent FMLA leave, receipt of a negative performance evaluations, and exclusion from meetings and decision-making processes collectively amount to adverse employment actions under Title VII.[58]

Regarding causation, Plaintiff asserts that her protected activity was ongoing, not limited to a single complaint in November 2021.[59] She argues that because Defendant never investigated or resolved her complaint about the racially offensive comments by her co-worker, she was forced to continually raise the issue until her resignation in April 2023.[60] Without citation to the record, Plaintiff maintains that retaliation escalated as she persisted in seeking accountability, resulting in a pattern of exclusion, criticism, and disparate treatment.[61] She further contends that under Fifth Circuit precedent, the continuous nature of her complaints preserves temporal proximity and supports a causal link between her protected activity and Defendant's adverse actions.[62] Plaintiff concludes that this ongoing pattern of retaliatory treatment precludes summary judgment on her retaliation claim.[63]

---

[57] R. Doc. 23 at 21.
[58] R. Doc. 23 at 21.
[59] R. Doc. 23 at 21
[60] R. Doc. 23 at 21.
[61] R. Doc. 23 at 22-23.
[62] R. Doc. 23 at 23.
[63] R. Doc. 23 at 23.

Finally, in reply, Defendant maintains that Plaintiff's opposition fails to establish either an adverse employment action sufficient for a retaliation claim under Title VII or a causal connection between any alleged adverse acts and her protected activity.[64] Defendant reiterates that Plaintiff's cited actions—including exclusion from meetings, denial of remote work privileges, increased scrutiny, and a negative performance evaluation—do not rise to the level of materially adverse employment actions under controlling Fifth Circuit precedent.[65] Defendant further argues that, even if these acts were adverse, Plaintiff fails to demonstrate "but for" causation, as required by Title VII, relying instead on her speculative belief that Defendant was retaliating against her.[66] Defendant asserts that Plaintiff offers no competent summary judgment evidence connecting the alleged adverse actions to her prior complaint of discrimination, and therefore, her retaliation claim cannot survive summary judgment.[67]

Here, the Court finds that Plaintiff has failed to meet her burden to establish she suffered an adverse employment action and a causal connection between the protected activity and the adverse employment action. First, Plaintiff did not suffer an adverse employment action. She alleges several workplace actions—including a negative performance evaluation, alleged exclusion from discussions, increased scrutiny, and denial of remote work privileges—yet none of these constitute adverse employment actions under binding Fifth Circuit precedent or the precedent of this

---

[64] R. Doc. 24 at 6.
[65] R. Doc. 24 at 6-7.
[66] R. Doc. 24 at 7.
[67] R. Doc. 24 at 7.

Court. Starting with the negative evaluation, the Fifth Circuit has held that "[A] negative performance evaluation does not constitute 'an adverse employment action actionable under Title VII.'"[68] Next, the alleged exclusion from workplace discussions appears to be based on the fact that she was "kept in the dark about a critical state inspection – a task that directly fell under [her] responsibilities."[69] Even resolving this allegation in her favor, exclusion from workplace discussions does not meet the requirement that the allegedly retaliatory action be materially adverse. "To determine whether an action is materially adverse, we look to indicia such as whether the action affected "job title, grade, hours, salary, or benefits" or caused "a diminution in prestige or change in standing among ... co-workers."[70] Plaintiff has not established by law or evidence that such exclusion is a materially adverse employment action. Finally, increased scrutiny and denial of remote work privileges are not adverse employment actions. The Fifth Circuit has determined chastisement by superiors does not rise to the level of material adversity that distinguishes an adverse employment action from "petty slights, minor annoyances, and simple lack of good manners" which the Supreme Court has recognized are not actionable retaliatory conduct.[71] Next, this Court in *Green v. Ochsner LSU Health Shreveport* held that a plaintiff could not show that she suffered an adverse employment action greater than

---

[68] *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422 (5th Cir. 2017) (citing *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 373 n.11 (5th Cir. 1998)).
[69] R. Doc. 34-2 at 5, ¶ 24.
[70] *Paul v. Elayn Hunt Corr. Ctr.*, 666 F. App'x 342, 346 (5th Cir. 2016) *(quoting Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009)).
[71] *Credeur v. Louisiana Through Off. of Att'y Gen.*, 860 F.3d 785, 798 (5th Cir. 2017) (citing *Stewart v. Mississippi Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009) (quoting *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

a de minimis harm after she received delayed work-from-home permission.[72] The Court sees no reason to deviate from its prior holding in this case. Plaintiff has failed to demonstrate that she suffered an adverse employment action. Finally, because Plaintiff has not established working conditions so intolerable that a reasonable person would feel compelled to resign, she cannot show constructive discharge.[73]

Second, even assuming arguendo that these acts could constitute adverse employment actions, Plaintiff has failed to demonstrate the required causal connection. Plaintiff relies solely on her belief that Defendant was retaliating against her for her protected activity in November 2021, but she provides no competent summary judgment evidence linking the challenged acts to her complaint of discrimination. Mere subjective belief or speculation of retaliatory animus is insufficient to establish causation.[74]

Accordingly, Plaintiff has failed to raise a genuine issue of material fact as to either the existence of an adverse employment action or the requisite causal connection. Summary judgment in favor of Defendant on Plaintiff's retaliation claim is therefore warranted.

---

[72] *Green v. Ochsner LSU Health Shreveport,* No. CV 22-1422, 2024 WL 1057217, at *7-8 (W.D. La. Mar. 11, 2024)
[73] *Stover v. Hattiesburg Public School Dist.,* 549 F.3d 985, 991 (5th Cir. 2008).
[74] *Welsh v. Fort Bend Indep. Sch. Dist.,* 941 F.3d 818, 826 (5th Cir. 2019).

## IV.  CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant Louisiana Homecare of Miss-Lou, LLC's Motion for Summary Judgment (R. Doc. 19) is **GRANTED** and Plaintiff Christa Bush's claims will be **DISMISSED WITH PREJUDICE**. A judgment consistent with this ruling will be issued accordingly.

**THUS DONE AND SIGNED** this 7th day of July, 2025.

_____
**JERRY EDWARDS, JR.**
**UNITED STATES DISTRICT JUDGE**